UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
Qing Yue Qiu *et al.*,              )
                                    )
               Plaintiffs,          )
                                    )
   versus                           )
                                    )
Michael Chertoff *et al.*,          )   Docket #: 07-cv-5571
                                    )   Before Judge Holwell
               Defendants.          )
_____)

## Plaintiffs' Motion for Summary Judgment

Plaintiffs, through undersigned counsel, respectfully submit the present motion for summary judgment pursuant to *Fed. R. Civ. P.* 56(c) and 12(c). This motion is made on the ground there is no triable issue as to any material fact, and that Plaintiffs are entitled to a judgment as a matter of law.

The standard for summary judgment may be stated as follows:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In reviewing the record, the district court must assess the evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and "draw all reasonable inferences" in its favor. *Am. Cas. Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
>
> The moving party can satisfy its burden by showing that the opposing party is unable to establish an element essential to that party's case and on which that party would bear the burden of proof at trial. *See Celotex*, 477 U.S. at 321; *Gallo v. Prudential Servs.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (A "moving party may obtain summary judgment by showing that

little or no evidence may be found in support of the nonmoving party's case."). Indeed, summary judgment is "mandated" when "the evidence is insufficient to support the non-moving party's case." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d Cir. 1998).

If the moving party meets its burden, the "non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996); *Celotex*, 477 U.S. at 322-23. An alleged factual dispute between the parties will not by itself defeat a motion for summary judgment, since "the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. Specifically, the non-moving party cannot rely on mere allegations, denials, conjectures, or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial. *See id.* at 256-57; *Gross v. NBC*, 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002).
*Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007).

The critical facts established in this case are that: 1) the National Visa Center ("NVC") forwarded Mr. Qiu's petition to the U.S. Citizenship and Immigration Service ("CIS"), but 2) the CIS claimed that it had not received it. The NVC wrote Mr. Qiu two letters stating that his file was forwarded to the Nebraska Service Center. These facts support Defendants' counsel's admission that the file was somewhere in the Nebraska Service Center (which is a part of the CIS) but the file could not be located due to the size of the service center and the volume of cases that it handled.

Since the Nebraska Service Center lost the file, the government breached its duty to process Mr. Qiu's case properly within a reasonable time. Under the Administrative Procedures Act ("APA"), as codified under 5 USC §555(a), agencies are required to proceed with reasonable dispatch to conclude matters presented to them. Under the APA, 5 USC §706(a), the District Court has the power to compel agency action which has been unlawfully or unreasonably withheld or delayed. Courts have always distinguished between a challenge to a discretionary determination on the one hand, and the failure to

2

exercise discretion on the other. *INS v. Cardoza-Fonseca*, 107 S. Ct. 1207, 1219 (1987) ("The distinction between the mandatory and discretionary parts of the statute has practical significance. What the Attorney General and his delegates must exercise is discretion."). As the Supreme Court explained:

> Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand. *See Neuman*, 113 Harv. L. Rev., at 1991 (noting the 'strong tradition in habeas corpus law ... that subjects the legally erroneous failure to exercise discretion, unlike a substantively unwise exercise of discretion, to inquiry on the writ').
> *St. Cyr v. INS*, 533 U.S. 289, 308 (2001).

Therefore, this Court has jurisdiction to rule that the Service has not properly adjudicated Mr. Qiu's application and find that he is eligible as a matter of law to have that application adjudicated, and the failure to do so constitutes a violation of Due Process. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) ("failure to exercise discretion is a reversible error."); *Asimakopoulos v. INS*, 445 F.2d 1362, 1365 (9th Cir. 1992) ("The Board's failure to exercise discretion is reversible error."); *Fesseha v. INS*, 1999 U.S. App. LEXIS 20852, *4 (10th Cir. 1999) ("When the regulations grant the attorney general discretion, the attorney general must to exercise its discretion."); *Kazlauskas v. INS*, 46 F.3d 902, 905 (9th Cir. 1995) ("If an applicant can show eligibility for asylum, then the INS must exercise its discretion to determine if the applicant is entitled to asylum."); *Doe v. United States*, 54 Fed. Cl. 404, 405 (2002) (when congress divest an agency discretion, the agency "must exercise its discretion" then deciding matters before it.); *Sol v. INS*, 274 F.3d 648, 651 (2d Cir. 2001) (The District Court has jurisdiction under 28 USC § 2241 to hear habeas corpus petitions which challenge removal orders that violate the Constitution or laws of the United States) (same);

*Gutierrez-Chavez v. INS*, 298 F.3d 824, 828 (1st. Cir. 2002) ("Habeas is available to claim that the Immigration and Naturalization Service somehow failed to exercise discretion in accordance with federal law or did so in an unconstitutional manner."); *Zemin Hu v. Reno*, 2000 U.S. Dist. LEXIS 5030 (N.D. Tx. 2000) (8 USC §1252 does not remove a district court's jurisdiction to order the INS to adjudicate I-485 applications on the merits); *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.C.N.M. 1999) (the duty to properly adjudicate I-485 applications is non-discretionary); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1182 (2d Cir. 1978) (duty to act on visa application); *Paunescu*, 76 F. Supp. 2d at 901 (INS required to adjudicate application for immigrant visa and adjustment of status); *Agbemaple v. INS*, 1998 U.S. Dist. LEXIS 7953, *2 (N.D. Ill. May 18, 1998) (duty to process application for adjustment of status within reasonable time); *Fraga v. Smith*, 607 F. Supp. 517, 521 (D.C. Or. 1985) (duty to process citizenship applications).

Whether or not the Nebraska Service Center had received Mr. Qiu's file from the NVC, the fact remains that the file is lost. Defendants have the duty to locate or reconstruct the file so that it can fulfill its duty to process Mr. Qiu's case properly and within a reasonable period of time; Defendants, however, breached this duty.

Defendants' eighth defense raised in their answer is completely misplaced. Defendants claimed that "[t]he Court lacks jurisdiction to consider the refusal of the United States Consulate to grant a [*sic*] Qi Zhuo Qiu a visa or other document that would enable him to enter the United States under the doctrine of consular nonreviewability." (Def. Answer P. 9, Eighth Defense). However, Plaintiffs did not ask the Court to direct *the manner* in which the consulate should exercise its discretion in granting a visa to the son. Plaintiffs asked only that the Court compel Defendants to *act* on the petition.

Moreover, the facts indicate that the file was lost while it was in the Nebraska Service Center, which is part of the CIS and not the consulate. Therefore, the consular nonreviewability doctrine is inapplicable in this case.

To the extent that there is no genuine issue of material fact, Plaintiffs' motion for summary judgment should be granted.

RESPECTFULLY submitted this 3 day of December, 2007.

                                            Theodore N. Cox
                                            Attorney at Law
                                            401 Broadway, Suite 701
                                            New York, New York 10013
                                            Tel: (212)925-1208
                                            Fax: (212)925-5188
                                            tedcoxecf@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                   )
Qing Yue Qiu *et al.*,             )
                                   )
                Plaintiffs,        )
                                   )
      versus                       )
                                   )
Michael Chertoff *et al.*,         )   Docket #: 07-cv-5571
                                   )   Before Judge Holwell
                Defendants.        )
_____)

### Plaintiffs' Statement of Material Facts

1)   Defendants admitted that Plaintiff, Qing Yue Qiu, is present in the United States as a lawful permanent resident. (Def. Answer ¶6). Defendants also admitted that Mr. Qiu was granted conditional asylum status by an Immigration Judge on June 23, 1999 and that the condition was removed on June 1, 2001. *Id.* at ¶15.

2)   Defendants admitted that Mr. Qiu was accorded lawful permanent resident status on December 29, 2004 based on his asylum status. *Id.*

3)   Defendants denied knowledge or information sufficient to form a belief as to the truth or accuracy of the fact that Qi Zhuo Qiu is the minor son of Qing Yue Qiu. (Def. Answer ¶6).

4)   However, Defendants admitted that on November 27, 2001, Mr. Qing Yue Qiu filed a Refugee/Asylee Relative Petition (Form I-730) on behalf of Qi Zhuo Qiu and that the I-730 petition was approved on May 23, 2002.(Def. Answer ¶¶16, 17).

5)   Under 8 CFR §208.21(a), an I-730 petition may be approved if the principal asylee has established by a preponderance of the evidence that the beneficiary is a spouse

1

or child of the principal asylee. *See also* 8 CFR §208.21(f). Under the statute, "[t]he term 'child' means an unmarried person under twenty-one years of age who is a child born in wedlock...." 8 USC §1101(b)(1)(A), INA §101(b)(1)(A).

6) It is undisputed that the U.S. Citizenship and Immigration Service ("CIS") approved Mr. Qiu's I-730 petition.

7) National Visa Center ("NVC") acts as a conduit between the CIS and the consular post abroad. After a petition is approved by the CIS, the petition package is forwarded to the CIS. As stated on its website, "[t]he NVC processes all approved immigrant visa petitions after they are received from Citizenship and Immigration Services in the Department of Homeland Security (CIS) and retains them until the cases are ready for adjudication by a consular officer abroad."[1] If the consular post returns a visa petition package, the package will be returned to the CIS through the NVC.

8) Qi Zhuo Qiu never received a visa application package or a notification for a visa interview. Consequently, he made an inquiry concerning the status of his petition.

9) In a letter dated April 19, 2006, the NVC responded and stated that "[t]he petition was returned to the U.S. Citizenship and Immigration Services (CIS – formerly known as INS) because the documentation was incomplete."

10) A year later, the NVC responded to another inquiry and provided the exact same response as it did in 2006.

11) Although the two letters from the NVC were attached to Plaintiff's complaint as Exhibit C, Defendants deny knowledge or information sufficient to form a belief as to the truth or accuracy as to the NVC's answer to Mr. Qiu's inquiries. (Def. Answer ¶¶19, 20).

---

[1] Available at: http://travel.state.gov/visa/immigrants/types/types_1309.html (last visited on November 30, 2007).

12) Defendants admitted that the Nebraska Service Center, to which the I-730 petition was submitted, stated in a letter dated April 4, 2007, that "USCIS records indicate that the I-730 for the individual [Qi Zhuo Qiu] has not been returned from the consulate yet." (Def. Answer ¶21).

13) Defendants admitted that the Nebraska Service Center responded in a letter stating that the approved I-730 petition was originally sent to the Consulate in Guangzhou, China via the National Visa Center ("NVC"), but it had not received the returned package from the consulate yet. *Id.*

14) After the present mandamus action had been commenced, a status conference was held in Honorable Holwell's chamber in September 2007.

15) In that conference, Defendants' counsel, Mr. James Loprest, Jr., stated that he had made inquiries about the location of Mr. Qiu's file.

16) He also represented that the file was somewhere in the Nebraska Service Center, but due to the size of the service center, Mr. Qiu's file could not be located at that time.

17) Mr. Loprest stated that he would continue to help locate the file and that he would arrange for a visa interview for the son once the file was found.

18) During the second status conference held on November 9, 2007, Mr. Loprest represented that Mr. Qiu's file still could not be located.

12/3/2007
Date

[signature]
Theodore Cox
Attorney at Law
401 Broadway, Suite 701
New York, New York 10013
Tel: (212)925-1208
Fax: (212)925-5188
tedcoxecf@gmail.com

3